## FOX PARK TIMBER CO. v. BAKER

(No. 2078; December 5, 1938; 84 Pac. (2d) 736)

For the plaintiff in error there were briefs by *Corthell, McCollough & Corthell* of Laramie, and oral argument by *N. E. Corthell.*

472

For the defendant in error, there was a brief and oral argument by *G. S. Parker* of Laramie.

RINER, Justice.

This proceeding in error was brought by the Fox Park Timber Company as plaintiff in error to obtain the review of a judgment of the district court of Albany County in a case arising in connection with the Workmen's Compensation Law of this State. The plaintiff in error may be at times hereinafter conveniently designated as the "Timber Company" or the "defendant." Ellen Baker, widow of Oliver Baker, deceased, the other party involved in the litigation as defendant in error, may subsequently be usually designated as the "claimant." The judgment in question made an award under the Workmen's Compensation Law aforesaid in favor of the claimant and her minor children for the death of her husband, in several amounts, which the trial court found were proper to be made and required pursuant to the statutes governing matters of that character. These amounts appear not to be asserted to be erroneous.

However, the contention is presented and argued on behalf of the Timber Company that the district court was without jurisdiction. First, because the Timber

Company did not consider that the relation of employer and employee existed between Oliver Baker and itself and accordingly did not contribute and had not contributed to the Industrial Accident Fund on his account and also declined to file any report concerning the accident involved. Supplementing this view it is also said that the papers filed in the case by the parties were insufficient to permit the question of whether Baker was or was not an employee of the Timber Company to be litigated. Second, because the employment in which the accident occurred was not one of the statutory extra-hazardous employments. Finally the argument is presented for the Timber Company that the evidence before the district court did not authorize it as a matter of fact to find that the relation of employer and employee existed between the defendant and Baker at the time the fatal accident occurred, but that the evidence properly interpreted required a finding that Baker then was an independent contractor so far as the work he was engaged in was concerned.

The accident resulting in this litigation occurred March 13, 1937. An "Employee's Report of Accident," as required by the Workmen's Compensation Statutes of Wyoming, was filed March 25, 1937, in the district court of Albany County by Ellen Baker on behalf of her husband, wherein, among other statements set forth, the manner in which the injury was sustained was described, as was also its nature and extent; a description of the injured person was in said report supplied, together with the names and residences of all the dependent members of Baker's family, and his employer's name was given as the Fox Park Timber Company, its post office address as Laramie, Wyoming, the nature of its business as "hauling ties," and the location of the place of work where the injury occurred as Woods Landing, Wyoming.

The same day this report was filed Mrs. Baker also

filed in said district court her application and claim for an award under the Workmen's Compensation Law aforesaid, in which it was alleged in substance that her husband was injured while engaged in his duties in extra-hazardous employment for the Fox Park Timber Company, his employer, at Woods Landing in Albany County, Wyoming; that she had filed a report of said accident with the Clerk of the District Court of said County, as required by law; that said employee was injured thus: On March 13, 1937, Oliver Baker, deceased, was driving a truck in hauling ties for the Timber Company; his truck stalled in the landing on the Laramie River at Woods Landing; he then secured another truck to give him assistance, and this truck backed toward the stalled truck; when deceased attempted to fasten chains to aid the stalled vehicle, the assisting truck lost traction and slid into the stalled truck crushing deceased between the two; that as a result Baker suffered a seriously crushed abdomen and intestines and sustained other internal injuries; that although he was immediately taken to a hospital and two surgical operations were performed upon his body, the injuries proved to be fatal.

After describing the injuries thus involved, it was alleged that they were not due solely to the culpable negligence of the injured employee; that an award of compensation from the Industrial Accident Fund of Wyoming should be made as provided by the Workmen's Compensation Law of this State; that the employee's death ensued as a direct result of these injuries; that an award of compensation should be allowed for temporary total disability, medical, surgical and hospital assistance, funeral expenses and all benefits due his widow and minor children, as provided by the Workmen's Compensation Law; that the employee at the time of the accident had as dependents his widow, Ellen Baker, and two minor children, Alice and John,

aged respectively five years and one year and nine months; that claimant is entitled to and asks compensation for the injuries above described. Both the employee's report and widow's claim for compensation were verified in due form before the Clerk of the District Court.

As already indicated, the Timber Company filed no report of the accident, but expressed a desire to contest the allowance of the award. The matter was by court order set for hearing on July 19, 1937, copies of this order being in due course transmitted to claimant, the defendant and the Attorney General of Wyoming. On that date defendant presented its objections to the jurisdiction of the court, which were overruled, and evidence was submitted on behalf of the claimant, the material portions to be at this time considered being substantially as follows: A physician, Dr. Ewing, testified on behalf of the claimant that he made an examination of Oliver L. Baker on November 12, 1936, to determine if the man was physically fit to work, the examination being made at the instigation of Mr. Roach, President of the Timber Company; that this report was turned over to the Secretary of that Company. The doctor further stated that he was one of the physicians attending Baker after his injury, and it was found that he had a severe abrasion of the lower part of the small intestine and a severe bruise to the blood supply in that area, an injury to the mesentery, which was a serious one, and that the cause of his death was a direct blow to the abdomen.

Mr. Roach, the Timber Company's chief officer, being called for the claimant for cross-examination under the statute, testified Baker worked as a trucker for his Company from September, 1936, to March, 1937; that he had a contract hauling ties, at a certain price per tie, and in that occupation he was to take care of himself, truck and everything else, buy gas, oil

and tires; that he was to be paid this stated price per tie after it was delivered down there at Woods Landing; that Carl Langendorf is the superintendent of the Timber Company; that the business of that Company is tie contracting covering the handling of the ties from the time the trees are first cut until they are shaped up and cut into ties and hauled and delivered down in the City of Laramie; that Baker was delivering the ties from the place where they were cut to a point on the edge of the river at Woods Landing.

Carl Langendorf, called as a witness by the claimant also for cross-examination under the statute, stated that he has been superintendent of the Timber Company for eight years; that the Company had as high as eleven or thirteen truckers from September, 1936, to March, 1937; that three of these owned their own trucks; that the truckers took the ties from the woods, wherever they happened to be, and put them down on the river; that he, Langendorf, is in charge of this work; that he directed where the ties were to be obtained and where they were to be taken; that they were taken to Woods Landing and piled as closely as possible to the river; that each trucker had a place where he was supposed to put his ties, and sometimes two or more had their own particular piece of the river to put them in; that he (Langendorf) had designated a place where Baker should put his ties; that the storekeeper at Woods Landing counted the ties for the Timber Company; that the Timber Company maintained the roads into the forest where the ties were piled.

Langendorf also stated that the contract between the Timber Company and Baker was an oral one; that the Timber Company had the same contract with all the truckers, the only difference being two and one-half cents a tie if the Company furnished the truck, that is to say, nine cents per tie if the Company supplied the truck and eleven and one-half cents if the trucker

had his own truck and kept up everything; that the truckers were required to haul the ties that Langendorf directed them to haul to the place he indicated; that the agreement made by the Timber Company with Baker was made in September; that Baker was not subject to discharge at any time so long as there were ties to haul and he did his work in proper manner and put the ties where they were supposed to be, but that Langendorf was the one to decide whether he did his work in a proper manner, Baker being required just to haul ties, no particular number; that Baker was engaged in this occupation on March 13, 1937; that Langendorf saw the last load he took at four or five o'clock in the evening, he then having a load of ties for the Timber Company headed for Woods Landing; that Baker hauled about sixty ties to the load; that the President of the Timber Company and the Secretary of that Company had issued orders that the truckers should receive no workmen's compensation; that he as superintendent of the Timber Company's work made no reports to the state department relative to the truckers because he has "no say-so of when they work or when they don't work or what they have to do with their trucks"; that the tie-hacks or tie choppers working for the Timber Company are also in Langendorf's charge as superintendent, sometimes these being thirty, sometimes one hundred in number; that these men have repeatedly received compensation; that in one sense of the word he (Langendorf) has the same agreement with the tie-hacks as with the truckers— they furnish their own saws and all their tools; that they are paid by the tie; that the superintendent has a little more control over the tie-hacks because he can tell them when to work and when not to, but it is usually done practically the same; that Langendorf made up claimant's Exhibit 2 at the time of Oliver Baker's examination by Dr. Ewing, this exhibit being a state-

ment signed by Baker and witnessed by Langendorf as an employee's statement of dependent persons under the Workmen's Compensation Act (See Section 124-134 W. R. S. 1931) ; that the Timber Company sells the truckers gas and oil and tires.

On redirect examination by counsel for the defendant, the same witness testified that there was a right reserved on the part of the Timber Company to stop Baker from hauling although there were ties still to be hauled, in that the Company kept the oldest trucks going as long as possible; that by that statement the superintendent meant that he (Langendorf) decided who should haul and who should not haul; that they can haul as many ties as they want as long as there are sufficient ties to keep them going; that Langendorf exercises no control over the way or the time the trucker performs his work, but they have to be piled at Woods Landing so that the forest ranger can stamp them; that Langendorf had no control aside from the place where they were to be piled for inspection and counted "and so on"; that if Baker wanted to lay off at any time or stop hauling altogether he could do so. However, on recross-examination, Langendorf further testified that if he wanted to "fire" Baker, he could do that.

A man by the name of Porter testified as a witness for the claimant that he was a trucker and knew that Oliver Baker was hauling ties for the Timber Company, going to Woods Landing with a load of ties with one Jerry Schmidt on the day the accident occurred; that he was examined by Dr. Ewing on the same day with Baker and made out a sheet similar to plaintiff's Exhibit 2 aforesaid, which he gave to Dr. Ewing.

After some testimony by the claimant the hearing was adjourned until August 4, 1937, on which date the Timber Company filed in the office of the Clerk of the District Court its "Answer to Report and Ap-

plication" aforesaid, wherein it, as defendant, denied that Oliver Baker was its employee or engaged in any employment by it at the time of the accident described in said application; denied also that said Baker was engaged at said time in an extra-hazardous employment; and affirmatively alleged that he was at the time aforesaid engaged in the performance of an independent contract theretofore entered into between him and it for the transportation of railroad ties from various locations in the Medicine Bow Forest to the Laramie River at or near Woods Landing. This answer admitted that Baker received an injury resulting in his death, but averred that the defendant had no direct knowledge of the details of the injury, and, therefore, denied each and every allegation in the application, claim and report filed, except as admitted in its answer. In this connection it may not be amiss to recall that this court has heretofore remarked that: "The claim and reports which in compensation cases take the place of pleadings should be liberally construed." Stanolind Oil & Gas Co. v. Harvey, 75 P. (2d) 1, — Wyo —.

At this time also the claimant submitted to the court a stipulation of the parties to the effect that Baker came to his death by reason of an accident occurring on March 13, 1937, while he was hauling ties for the Timber Company under the contract testified to by Carl Langendorf.

The defendant then presented its evidence in the case, this being in the form of additional testimony by the witnesses hereinabove mentioned, Dr. Ewing testifying among other things that Baker paid him for an injury to the workman's knee, which injury had been incurred in the course of hauling ties, but that it was an old injury. The president of the Timber Company, Roach, stated that Exhibit 2 aforesaid was signed because frequently the men changed employment, that is to say, they worked for the Company by

the day and not as truckers, and by filling out a statement of this character another examination is saved; that Exhibit 2 is a form put out by the State; that he was told by the compensation department of the State that "everyone, whether they was contractors or not, have them file that in case they went to work" for the Timber Company.

There was also supplemental testimony by the superintendent, Langendorf, in the course of which he stated that truckers must not leave a few ties scattered through the woods, but were required to clean them up as they went; that the ties had to be piled in or close to the river, so that they could be stamped and counted; that the superintendent reserved no right to stop Baker from hauling so long as there were ties to haul and he did his work and Uncle Sam could count them and he cleaned up his piles. On cross-examination the same witness testified verbatim:

"Q You said that you could decide when there wasn't enough to keep the trucks busy and lay them off or stop them, is that right?

A It was the order to keep the oldest ones busy and lay off the last ones that came if there wasn't enough ties to haul.

Q As a matter of fact, on any of these tie haulers, you are the one to decide whether a man will work or not work, isn't that right?

A I don't think so. The conditions decide that.

Q But you decide that according to the conditions, but you are the one to determine that?

A Yes.

Q So that you are the one to decide whether a truck driver will work or will lay off?

A No, I didn't say it that way. If his work wasn't done properly, I could lay him off, or if we were short of ties.

Q But you were the one to decide whether you were short of ties or whether his work had been done properly?

A Yes."

Relative to the objection concerning the jurisdiction of the district court to determine whether one who regards himself, by reason of his peculiar contractual arrangement with another, as not subject to the operative force of the Workmen's Compensation Law, and for that reason in fact declines, and has declined, to contribute to the Industrial Accident Fund on account of that other, and declines, and has declined, to report injuries suffered by such other, is correct in adopting that course of procedure, we are convinced that it is the intent of the law that the court does have that power. Section 124-113 Wyoming Revised Statutes, 1931, as finally amended by Laws of Wyoming, 1937, Chapter 128, Section 4, contains extremely broad language which fairly construed leads to such a conclusion. That section indicates very fully how uncontested claims in Workmen's Compensation cases shall be investigated by the district judge and awards made therefor. This is followed by language indicating the procedure when there is a "dispute, as to the *right of the injured employee or his dependent family to receive compensation,* or as to the amount thereof." This broad statement is itself supplemented and reinforced in the same section by the subsequent wording thereof reading:

"If the employer, in his report of the injury, alleges that the injury was due solely to the culpable negligence of the injured employe, *or that the claim for compensation is one not coming within the provisions of this chapter,* then a jury may be demanded by either party and *the cause shall be tried, as a court proceeding.* * * * * At the conclusion of the hearing, the court shall enter an order pursuant to the verdict of the jury, if a jury be called, and *if no jury be called, the court or judge shall render a decision upon the facts and law of the case pursuant to the provisions of this chapter, and make an order allowing or disallowing compensation, as the law and the evidence may warrant.*"

We have italicized the significant portions of the language employed in each of the above quotations. It is suggested that this language may not properly be so construed because "the entire system of the Workmen's Compensation Law is based upon the assumption that the relation of employer and employee exists." That this is so we have no doubt, but if this becomes in any matter of this kind a disputed question of fact or law, we see no reason at all for denying the power of the district court to decide the point in a "court proceeding," as the statute indicates, and in the very cause in which the point is raised.

If the contrary view were adopted, then an employer by simply denying his liability under the Workmen's Compensation Law would either be able to frustrate the operation of the law entirely—a law which by its own terminology is described as "exclusive, compulsory and obligatory upon both employers and employes coming within" its provisions (W. R. S., 1931, Section 124-103)—or to delay at great length the final disposition of such a case. We are far from convinced that the law contemplates and requires a separate civil action to determine every jurisdictional question which may arise at the threshold of the investigation of each case arising under the Workmen's Compensation Statutes of Wyoming. This court has often pointed out that the law contemplates a speedy disposition of matters of this character. The scope and purpose of the law taken in its entirety as well as the rules of this court alike recognize the necessity therefor. Shaul v. Colorado Fuel & Iron Co., 46 Wyo. 348, 26 Pac. 639 and cases cited.

There does not seem to be any real cause for anxiety that the rights of the parties will not thereby be preserved. Take the case at bar for example. There seems to have been no difficulty whatsoever as concerns the nature and form of the proceeding in deter-

mining the preliminary question whether the district court had power to decide whether the relation of employer and employee in fact and law existed and it should thereafter proceed to consider its duty to make an award herein. The defendant so far as we can see was not hampered in any way in its presentation of the law or facts for which it contended. The papers filed in the case and upon which the issues were made up, while somewhat informal perhaps, seem to have been amply sufficient to have apprised the court and all parties concerned exactly what should be decided, and we have had no difficulty in ascertaining the points for review in this court. All the district courts of this State, even in civil actions, frequently try and dispose of issues satisfactorily on papers far more informal than those at bar. The records in cases examined here abundantly establish that to be a fact. Besides it is axiomatic that every court has judicial power to hear and determine the question of its own jurisdiction of the parties and subject-matter in a cause and is necessarily required to do so when it undertakes its disposition. 15 C. J. 851 and cited cases. No satisfactory reason is presented why special statutory proceedings should or do supply an exception to this rule.

Our attention is directed to the provisions of W. R. S. 1931, Section 124-136, which enacts that:

"Nothing in this chapter shall be construed to limit or affect any right or action by an employe against an employer for injuries received while in the employ of such employer when such employer at the time of such injuries is not contributing to the industrial accident fund as provided in this chapter."

We are unable to see that it is pertinent here. The claim made and litigated in the case at bar is made under the Workmen's Compensation Law and that alone. No other rights are asserted by the claimant.

It is unnecessary in this proceeding to determine the operation of this Section.

The contention that the Timber Company was not engaged in an extra-hazardous occupation as defined by the statute we also find to be without merit. As set forth above, Mr. Roach, its president, described his company's business as "tie contracting" and that it covered the handling of the ties from the time the trees are first cut until they are shaped up, cut into ties, hauled, "until they are delivered down here to Laramie," and that what Baker was doing was delivering these ties from the places where they were cut to a point on the river at Woods Landing. The amended Section 124-104 W. R. S., 1931, (Laws of Wyoming 1937, Chapter 128, Section 1) in listing the extra-hazardous occupations included within the operation of the statute, among the many therein given, enumerates "logging, lumber yards, lumbering."

In Kollock v. Parcher, 52 Wis. 393, 9 N. W. 67, construing the word "timber" as used in a lien statute of the State of Wisconsin, the court declined to uphold an argument that railroad ties were not included within the word "timber," and it was said:

"Railroad ties are usually made from the stems of small trees, and shaped for use in the construction of a railroad track, and we think are as clearly timber, within the meaning of that word as used in the statute, as squared sticks of timber prepared for use, as beams, sills, and posts in the construction of a dwelling-house or other building."

A timber patrol is held in Hinton v. Louisiana Central Lumber Co., (La. App.) 142 So. 616, to be engaged in the hazardous business of logging within the purview of the Employers' Liability Act of that state (Act No. 20 of 1914, as amended). His duties were, as the court said:

"His time was devoted to the work of supervising

the cutting into sawlogs and the hauling thereof, of certain timber, or, in other words, under his allegations, plaintiff at times was engaged in performing work in the 'logging' department of defendant's operations, which is a hazardous occupation, under the act."

In Louisiana the statute allowed a workman compensation for injuries sustained in "logging and lumbering." In the case of Durrett v. Woods, 155 La. 533, 99 So. 430, the court in its opinion stated that:

"Certainly the hauling of the logs, timber, and lumber for the derrick was 'logging and lumbering' in the sense in which these terms are used in the statute. It has been held that a mere laborer employed as a part of a logging outfit engaged in cutting down trees and sawing them into logs comes within the terms of the statute. Bell v. Hanson Lumber Co., 151 La. 824, 92 South. 350; Dick v. Gravel Logging Co., 152 La. 994, 95 South. 99."

In Hollinsworth v. Crossett Lumber Co., (La. App.) 153 So. 722, likewise a Workmen's Compensation Act case, we find the court saying:

"The petition clearly sets out that defendant was engaged in the logging and timbering business and that its contractor, Sam Hollinsworth, was hauling for it, by motortruck, its logs to the mill of the Southern Kraft Corporation. This was certainly a part of the stated trade, business, or occupation of defendant."

So in Gagnon's Case, 125 Me. 16, 130 Atl. 355, it was queried:

"What is meant by employment in logging and lumbering operations? The Legislature has not given a definition, but has only by implication pointed out that the expression includes the work of cutting, hauling, rafting, and driving logs. R. S. c. 50, § 4, as amended by Laws 1919, c. 238, § 4."

The hazardous occupations made compensable under the Oregon law included "logging, lumbering and ship-

building operations," and the court in Peterson v. State Industrial Accident Commission, 140 Or. 326, 12 P. (2d) 564, said, after quoting the statute:

"This indicates that one engaged in logging or logging operations is employed in one of the statutory hazardous occupations. One may be said to be engaged in logging or in logging operations when he is felling trees of merchantable size for lumber, removing the branches, cutting them into suitable lengths, and hauling them to some point for manufacture or transportation."

And in the later case of Middlebusher v. State Industrial Accident Commission, 147 Or. 459, 34 P. (2d) 325, the Supreme Court of Oregon also said:

"As stated above, section 49-1815 declares certain occupations to be hazardous and logging is included therein. As ordinarily defined, logging consists of felling trees, cutting them into logs, and transporting them to mill or market. Every employer, while engaged in logging, is engaged in a hazardous business and becomes automatically subject to the Workmen's Compensation Act unless he shall have given written notice to the commission of his election not to become subject to the act."

With the authorities hereinabove briefly reviewed in mind, we are inclined to think that in the case at bar a reasonable and fair construction of the Wyoming law requires us to reach the conclusion that the hauling of the ties by Baker was embraced within the terms of our statute quoted above as a part of the operations of either logging, lumbering or both.

Was Baker in performing the duties assigned him an independent contractor? Many tests have been devised by legal thought to determine whether or not the person who has entered upon the performance of certain work should be classed as such, and a survey of the cases, of which there are legion, makes it clear

that the individual circumstances of each case play an important part in answering the query. The decisions of the courts are far from reconcilable. However, there are certain well known earmarks which are pretty generally examined by them before announcing their conclusions. An outstanding one of these is whether the employer has or has not retained the right of control over the party whose status is in question. If he has retained such right, the party is generally regarded as a servant. Stockwell v. Morris, 46 Wyo. 1, 22 P. (2d) 189; 28 R. C. L. 762; 71 C. J. 455, and cases cited. Another test is whether either of the parties possesses the right to terminate the services at will without incurring liability to the other, this embracing, of course, the right of the employer at any time to discharge the party performing the work, an affirmative answer establishing the status of master and servant. Burchett v. Department of Labor & Industries, 146 Wash. 85, 261 Pac. 802; Press Publishing Co. v. Industrial Accident Commission, 190 Cal. 114, 210 Pac. 820; Industrial Commission v. Bonfils, 78 Colo. 306, 241 Pac. 735; Barker v. Bemidji Wood Products Co., 184 Minn. 366, 238 N. W. 692; Aisenberg v. C. F. Adams Co., 95 Conn. 419, 111 Atl. 591; 71 C. J. 460, and cases cited; Barruss v. B. M. C. Logging Co., 38 N. Mex. 254, 31 P. (2d) 263. Some of the other matters looked to by the courts in aid of their determination of the problem are the manner in which the compensation for the work done is paid, that is, whether it is based upon time or piece, the workman being frequently regarded in such case as a servant, while where it is fixed as a lump sum for the task, the obligations of an independent contractor are imposed upon him; the furnishing of teams, wagons or tools by the employer or the workman, 71 C. J. 767 and cited cases; 42 A. L. R. 620 note; 43 A. L. R. 1318; and the right of the workman to begin or stop work

as he pleases, involving the privilege of working on such days as he may choose, 71 C. J. 470 and cases listed; 42 A. L. R. 621 note; 43 A. L. R. 1318 note. As phases of control or right of control may be mentioned the factors: the place where the work is to be performed, the scope of the work and the control of the premises where the work is required to be done. 71 C. J. 458.

In the case before us the contract between the Timber Company and Baker was not intricate. The workman was employed at a certain rate per tie; he was required to pick up ties in the woods at specific places on the Timber Company's Forest Permit from the United States Government, cleaning up the piles of ties as he did so, hauling them to Woods Landing, piling them at a certain spot on the edge of the river there in such a manner that they could be counted and stamped by the proper representatives of the Company and the Government. The Timber Company in fact controlled where the ties were obtained and where they were to be taken and how they were to be piled at Woods Landing; it controlled the roads into the forest over which Baker operated; so long as Baker did his work properly he was not to be discharged, yet the Company had the right to determine whether he was doing the work as directed and also to stop him from working at any time when truckers who had been in service longer than Baker needed the work and there was a shortage of ties. While Baker could usually haul or stop hauling as he pleased, the Timber Company could "fire" him if it wished to do so; he was not obligated to haul a particular number of ties. Baker had his own truck, his purchase thereof having been originally financed by Roach, the president of the Timber Company, and Baker purchased his own supplies, at least to some extent, from the Timber Company for it.

The men who shaped up these railroad ties, or "tie-hacks" as they are called in local parlance, furnished all their own tools, saws, etc., they were paid by the tie, just as were the truckers, and they had practically the same sort of contract with the Timber Company as the men who did the hauling of the timber they were fashioning. While these men have repeatedly been allowed compensation under the Workmen's Compensation Statutes, the "truckers," whether they owned their own trucks or not, apparently were "not to have compensation" simply because the Timber Company so ordered.

It is established that the injury was incurred while Baker was engaged in the operation of hauling these ties for the Timber Company, and the latter as a matter of fact controlled that operation in its business in all essential particulars. We have no doubt that it is a fair conclusion from the evidence that it also retained the right to control that operation in all other respects if it saw fit to do so. This conclusion necessarily results from the fact that it had the exclusive right to determine at all times whether the men doing the hauling were doing their work properly, and also possessed the right to dispense with their services if they did not perform that work as the Timber Company's executives thought they should.

Taking all the circumstances of this case into account in the light of the evidence briefly outlined as above, and applying the various tests mentioned, and recalling that the Workmen's Compensation Law is to be construed with reasonable liberality to protect those suffering casualties in industry and to avoid incongruous results (McConnell v. Murphy Bros. et al., 45 Wyo. 289, 18 P. (2d) 629, and cases there cited), we think that there was substantial evidence in the record before us and ample authority in law to enable the trial court

to find as it did, that Oliver Baker at the time he was injured was an employee of the defendant and not an independent contractor. Our conclusion necessarily must be, therefore, that as there has appeared no reversible error to invoke the appellate power of this court to interfere with it, the judgment should be affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.