KING v. SOUTHWESTERN GREY-
HOUND LINES, Inc., et al.

No. 3631.

Circuit Court of Appeals
Tenth Circuit.

Aug. 6, 1948.

William A. Berry, Asst. U. S. Atty., of Stillwater, Okl. (Robert E. Shelton, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellant.

John F. Eberle, of Oklahoma City, Okl. (Draper Grigsby, of Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellant, Leo F. King, brought this suit against the appellee transportation companies under Section 8(e) of the Selective Training and Service Act of 1940, 54 Stat. 890, 50 U.S.C.A.Appendix, § 308(e), alleging in substance that on July 31, 1942, he left the position of depot or station agent in the employ of the appellees to enter the active military service and continued upon active duty until his honorable discharge November 20, 1945; that appellees had refused his demand for restoration of his former position or one of like seniority, status and pay, as required by Section 8(a)

(b) of the Act. He attached a contract between him and the appellees governing their relationship and prayed judgment for restoration of his position in accordance with the Act or in the alternative a money judgment.

The trial court sustained a motion to dismiss and gave judgment for the appellees, holding that the contract between the parties constituted the relationship of an independent contractor—not that of employer-employee, as contemplated by the Selective Training and Service Act, supra.

The sole question on appeal is whether under the contract between the parties appellant was in the employ of the appellees within the meaning of Section 8(b) of the Act, which in substance and effect provides that " * * * one who leaves a position * * * in the employ of any employer * * * " to perform training and service under the Selective Training and Service Act, shall upon honorable discharge and demand, be restored to his former position or a position of like seniority, status and pay, unless the employer's circumstances have so changed as to make it impossible to do so.

The Act does not define the critical words of coverage and they must, therefore, be construed in accordance with their common usage, Brown v. Luster, 9 Cir., 165 F.2d 181, and "in the light of the mischief to be corrected and the end to be attained." South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 259, 60 S.Ct. 544, 549, 84 L.Ed. 732. See also National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 124, 64 S.Ct. 851, 88 L.Ed. 1170.

Without attempting to provide a rule of thumb, courts have generally followed the common law concept that one is in the employ of another when he is subject to his direction and control as to the method and manner of performing his duties in the result to be accomplished. If on the other hand, one undertakes to perform services for another according to his own method and manner free from direction and control in all matters relating to the performance of the work, except as to the result, he is an independent contractor, and the relationship of employer-employee does not exist. Woods v. Nicholas, 10 Cir., 163 F.2d 615; United States v. Wholesale Oil Co., 10 Cir. 154 F.2d 745; Jones v. Goodson, 10 Cir., 121 F.2d 176.

The courts have utilized this general formula under a wide variety of circumstances, having due regard always for the legislative objective. See Board v. Hearst Publications, supra; Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772; United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757; Brown v. Luster, supra; Woods v. Nicholas, supra. See also cases collected in Annotation, 134 A.L.R. 1029 and 147 A.L.R. 828. "The primary consideration * * * is whether the declared policy and purposes of the Act comprehend securing to the individual the rights guaranteed and protection afforded by the Act." See United States v. Silk, 331 U.S. 704, page 713, 67 S.Ct. 1463, page 1468, 91 L.Ed. 1757. To that end the critical words must have a liberal construction. Fishgold v. Sullivan Drydock & Repair, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110; Boone v. Lightner, 319 U.S. 561, 63 S.Ct. 1223, 87 L.Ed. 1587; Lawrence v. Keokuk, 10 Cir., 162 F.2d 929.

In the judicial process some courts have recognized as important, but inconclusive factors, the right to hire and discharge persons doing the work; the method and determination of the amount of payment; whether the person doing the work is employed in an independent business; whether the contractee stands to make a profit on those working under him; which party furnishes the tools, materials and equipment; who has control of the premises where the work is done; whether either party may terminate the relationship without incurring liability to the other; the degree of control; the skill required; the freedom to determine one's own hours of work; the right to engage in other professional activity; the dependence upon one's own initiative, judgment and energy for success. United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757; Brown v. Luster, 9 Cir., 165 F.2d 181; Williams v. United States, 7 Cir., 126 F.2d 129; Atlas Ins. Company v. Foraker, 196 Okl.

389, 165 P.2d 323; Dierks Lumber & Coal v. McDaniel, 188 Okl. 695, 112 P.2d 1082; Fox Park Timber Co. v. Baker, 53 Wyo. 467, 84 P.2d 736, 120 A.L.R. 1020; L. B. Price Mercantile Co. v. Industrial Commission, 43 Ariz. 257, 30 P.2d 491. See also cases collected in annotation, 134 A.L.R. 1029, 147 A.L.R. 828 and 27 Am.Jur.Independent Contractors, Secs. 5–26. Some courts have gone so far as to hold that the right of one party to terminate the contract for services at any time for any reason, created an employer-employee relationship as a matter of law. Magnolia Petroleum Co. v. Pierce, 132 Okl. 167, 269 P. 1076, 1077; Fox Park Timber Co. v. Baker, 53 Wyo. 467, 84 P.2d 736, 120 A.L.R. 1020; L. B. Price Mercantile Co. v. Industrial Commission, 43 Ariz. 257, 30 P.2d 491.

The contract specifically provided that the appellant was an independent contractor whose activities were limited to the consummation of the contemplated results, but it is the effect of the contract on the parties that controls their relationship, not what they chose to call themselves. Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772; Matcovich v. Anglim, 9 Cir., 134 F.2d 834; Lee v. Remington Rand, D.C., 68 F.Supp. 837.

Under the terms of the contract the Bus Companies leased a building in the city of El Reno, Oklahoma for use as a Bus Station and sub-leased it to King at a monthly rental of $50 to be deducted from any monies due him at the end of the month. King was to pay all utility bills and other bills of a similar nature. He was to provide suitable waiting rooms and other facilities to insure the comfort of bus passengers, and assume all legal liability for any claims which might arise from his failure to maintain such facilities and all walks, approaches and premises appurtenant thereto in a clean, sanitary and safe condition. He agreed not to sub-lease or sublet any space in the Bus Station for any concession or otherwise without first obtaining permission of the appellee companies and if such approval was given, the sub-lease was to be subject to the terms of his agreement with appellees. He was to be held respon-

sible and liable for all acts of his employees, subordinates and associates. Suitable signs designating the premises as a Bus Stop were to be maintained by King and he agreed that the title to all station equipment, signs, etc. furnished by the Companies should remain their property and returned upon termination of the contract.

It was further agreed that King would sell bus tickets for the Companies and their affiliated carriers at the tariff rates furnished by the Companies and furnish to the public any information contained in the Companies' tariffs, bulletins, circulars and literature, and that title to all tickets and the proceeds therefrom should remain in the Companies. He also agreed not to sell tickets or render any service for competitors or permit any other person or company to use the facilities of the Bus Station, without first obtaining permission of the appellee Companies. Company representatives were authorized at reasonable hours to inspect and check all property belonging to them and to inspect and audit all records and accounts pertaining to their business, and King agreed to make reports of all sales and assume responsibility for all monies and property which belonged to the Companies. He was to handle all baggage, express and U. S. Mail for the Companies and their patrons, and assume full responsibility for all such baggage, express and mail while in his custody. He was to perform all these duties as agent "in a manner satisfactory to the appellees" and to receive as compensation therefor 10% of all tickets sold and 10% of all transportation charges for express received collect and shipped prepaid by him. The contract was on a monthly basis, but could be terminated by either party upon the giving of 10 days notice or immediately if there was a violation of any of the terms or a default by King in the accounts or remittances.

It is inconceivable how more completely the Companies could control the details of the operation of the Depot and their control of these details was made well-nigh absolute by the power to terminate the contract within 10 days for any reason or at any time for failure to comply with the

terms of the contract. In comparison to the truck driver "small businessmen" in the Silk case, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757, appellant had little or no voice in the conduct of his business. We think that when, as here, one undertakes by contract to control every detail of a business he should not be heard to say that those who perform the details are not his servants.

We hold that when the contract is considered in its totality and in the light of the legislative purpose, it creates an employer-employee relationship, and the complaint therefore states a claim upon which relief can be granted.

The judgment is reversed.