**In the Matter of the Claims of Linda M. NAYLOR, wife of Stanley D. Naylor, deceased, an employee of Railworks, Inc.**

**RAILWORKS, INC. Appellant (Employer-Defendant),**

**The State of Wyoming, ex rel. Wyoming Workers' Compensation Division, Appellant (Objector-Defendant),**

v.

**Linda M. NAYLOR, Appellee (Claimant).**

**No. 86–57.**

Supreme Court of Wyoming.

Aug. 15, 1986.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Josephine T. Porter, Asst. Atty. Gen., Cheyenne, for appellant, State of Wyoming.

Harlan W. Rasmussen, Sheridan, for appellant, Railworks, Inc.

Hardy H. Tate, Sheridan, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Justice.

This appeal comes to us from an award of worker's compensation to appellee Linda M. Naylor, widow of Stanley D. Naylor. Mr. Naylor was killed in an automobile accident while returning home to Sheridan, Wyoming after quitting work as a rail cutter in Colorado. Appellants Railworks, Inc., the employer, and the Wyoming Worker's Compensation Division (the state), contested the award and bring this appeal raising the following issues:

"I

"Was appellee an independent contractor or an employee of appellant at the time of the accident?

"II

"Did appellee's death arise out of and in the course of employment under Section 27–12–102(a)(xii), W.S.1977?"

We will affirm the trial court's finding that Mr. Naylor was an employee, but reverse the award of worker's compensation inasmuch as we find Naylor was not within the scope of his employment when the accident occurred.

The facts show that Mr. Naylor was hired by Railworks, Inc., to cut boxcars and rails. Naylor was hired in Sheridan, Wyoming, but the job site was in Keenesburg, Colorado. To facilitate the transporting of employees, Naylor used his personal van. On several occasions, Naylor was given money for gas to drive his van.

On October 21, 1985, Naylor terminated his employment. Work was slow and he felt he could make more money "selling firewood," so he quit. Later that day Naylor went to a bar and began drinking. Around 5:30 or 6:00 p.m., he informed his supervisor, Bill Workman, in the bar, that "he was going to quit." Mr. Workman testified that Naylor was "intoxicated" at the time.

Around 8:00 p.m. Naylor left in his van, driven by a co-employee, Albert Kukuchka. Mr. Kukuchka had also quit that day. They were driving back to Sheridan when Naylor fell out of the passenger door and died of massive head injuries. The accident occurred approximately 100 miles from Keenesburg, Colorado. His widow, appellee Linda Naylor, filed for worker's compensation. After a hearing, the trial court found Mr. Naylor was an employee operating within the scope of his employment and entitled to benefits. The trial court made a factual determination that Naylor had quit his job and appellant does not contend otherwise.

I

■ In their first issue, appellants ask whether the trial court erred in determining that Naylor was an "employee" within the meaning of the worker's compensation act, as opposed to an "independent contractor." Section 27–12–102(a)(viii), W.S.1977 (June 1983 Replacement), defines employee as:

" 'Employee' means any person who has entered into the employment of or works under contract of services or apprenticeship with an employer engaged in an extrahazardous occupation, except a person whose employment is purely casual and not for the purpose of the employer's usual trade or business, or those engaged in clerical work and not subject to the hazards of the business. 'Employee' also includes the officers of a corporation, the business of which is classed as extrahazardous, if the officers are actually subject to the hazards of the business in the regular performance of their duties, and the employer elects to come under the provision of this act by notifying the division by registered mail at least thirty (30) days prior to the effective date of the coverage. Coverage remains effective until withdrawn by written notice to the division. Any reference to an employee who has been injured and dies, includes his dependents or his legal representatives, or his guardian or next friend if the employee is a minor or incompetent. No minor employee shall be denied the benefits of this act for the sole reason that his employment is in violation of the labor laws governing the employment of minors."

When Naylor went to work for Railworks, Inc., he was required to sign a contract. Paragraph 8 of this contract provided that the company "shall have no right to control or direct the details, manner or means by which contractor accomplishes the results of his work on each project." Based upon this, appellants claim Naylor was an independent contractor. But the evidence shows that Railworks, Inc., paid worker's compensation for its employees. When the company president was asked why worker's compensation was paid when he claimed employees were "independent contractors," he stated he purchased the worker's compensation because, "It's the cheapest form of insurance. * * "

We have oft-stated that the main determining factor in deciding whether one is an employee or an independent contractor is whether the employer retains the right to control the details of the work. *Noonan v. Texaco*, Wyo., 713 P.2d 160 (1986); *Scott v. Fagan*, Wyo., 684 P.2d 805 (1984); *Burnett v. Roberts*, 57 Wyo. 511, 121 P.2d 896 (1942).

In *Fox Park Timber Co. v. Baker*, 53 Wyo. 467, 488, 84 P.2d 736, 743, 120 A.L.R. 1020 (1938), we stated the following regarding whether one is an employee or independent contractor:

> " * * * An outstanding * * * [test] is whether the employer has or has not retained the right of control over the party whose status is in question. If he has retained such right, the party is generally regarded as a servant. *Stockwell v. Morris*, 46 Wyo. 1, 22 P.2d 189; 28 R.C.L. 762; 71 C.J. 455, and cases cited. Another test is whether either of the parties possesses the right to terminate the services at will without incurring liability to the other, this embracing, of course, the right of the employer at any time to discharge the party performing the work, an affirmative answer establishing the status of master and servant. * * *"

From a review of the evidence, it appears that the employment relationship could be terminated at any time, thus indicating a master-servant relationship.

In response to questioning by the court, Bruce Harbel, a co-worker testified that Bill Workman, supervisor of Railworks, was indeed the boss:

> "THE COURT: The Court has a couple questions, Mr. Harbel.
>
> Mr. Workman—what was his function as far as you were concerned?
>
> "THE WITNESS: He was our boss.
>
> "THE COURT: What would he do? Did he tell you what to do or what?
>
> "THE WITNESS: Yeah.
>
> "THE COURT: How did he tell you what to do?
>
> "THE WITNESS: He told us to go to work. He was—well—huh, I don't know really.
>
> "THE COURT: Did he direct you in any way on the work you were to do?
>
> "THE WITNESS: Yeah. He told us when—like, they had a big Cat out there pulling rail, and Bill would come back to the house and tell us that it was ready to go on out—things like that, yes.
>
> "THE COURT: But did he direct you on how you were to perform the job once you were there?
>
> "THE WITNESS: Well, on the rail it was more or less no one really knew what they were doing, so it was kind of a group discussion on what to do next.
>
> " * * *
>
> "THE COURT: Well, other than telling you when you were to go out there, did Mr. Workman do anything else? That's what I'm trying to get at. Did he direct you when you were on the job or were you your own director or your own boss, or was he your boss on the job?
>
> "THE WITNESS: He was the boss on the job.
>
> "THE COURT: In what way? What did he tell you to do or not to do?
>
> "THE WITNESS: He could tell us to cut this part over here and go to this part over here and finish up this part over here. You know, that was his plan.
>
> "THE COURT: So he directed you in what you did?
>
> "THE WITNESS: Yes.
>
> "THE COURT: How you cut these boxcars or the rails up?
>
> "THE WITNESS. Yes."

Although there is evidence to the contrary, we think the trial court was correct in concluding that Naylor was an employee of Railworks, Inc., and not an independent contractor. Furthermore, the company did pay worker's compensation for its employees. It is inconsistent and a misuse of the worker's compensation system to pay for

employees as such and then claim the workers are independent contractors once a claim is made.

We rejected a similar argument in the case of *In re Reed*, Wyo., 444 P.2d 329, 330 (1968), wherein we stated:

"We find no merit in the first-mentioned ground of appeal. Although there is some intimation and casual reference by Husman Bros. to the fact that appellee was performing a contract which created the relationship of principal and independent contractor rather than employer and employee, there is no cogent argument presented to substantiate this, and the fact that the corporation reported him to the Workmen's Compensation Department as being on its payroll is inconsistent with the contention."

For all the reasons stated, we affirm the trial court's determination that Naylor was indeed an employee of Railworks, Inc.

## II

In their second issue, appellants claim the trial court erred in finding that Naylor was within the scope of his employment when he was killed while traveling home.

■ To be compensable, an injury must arise out of and in the course of employment. § 27–12–102(a)(xii), W.S.1977 (June 1983 Replacement). There must be a causal connection between the injury and the course of employment, and such a causal connection is found when there is a logical nexus between the injury and some condition, activity, environment or some requirement of the employment. *Parker v. Energy Development Co.*, Wyo., 691 P.2d 981 (1984).

■ It is the general rule in this state that workers are not within the course of their employment while they are going to or from work. *Matter of Van Matre*, Wyo., 657 P.2d 815 (1983); and *Wyoming State Treasurer ex rel. Workmen's Compensation Department v. Boston*, Wyo., 445 P.2d 548 (1968). However, if an employer supplies transportation or somehow subsidizes the cost of travel, the coming-and-going rule does not apply and an employee injured while traveling to or from work is considered within the scope of his employment. *Matter of Willey*, Wyo., 571 P.2d 248 (1977). This rule was recognized by the court in the case of *In re Jensen*, 63 Wyo. 88, 99–100, 178 P.2d 897, 900 (1947):

" * * * [W]here the employer himself as a part of the employment arrangement supplies transportation to and from the place where the duties of the employee actually commence, an exception to the general rule arises and a different result ensues."

■ A further complication is added when, as here, an employee has quit and is winding up his affairs. It is generally recognized that an employee has a reasonable period of time after quitting or being fired in which to finish his business. Injuries incurred during this period of time may entitle an employee to worker's compensation. One authority has stated:

"§ 26.00 Injuries incurred by an employee while leaving the premises, collecting pay, or getting his clothing or tools within a reasonable time after termination of the employment are within the course of employment, since they are normal incidents of the employment relation. * * *

"§ 26.10 Leaving the premises after quitting

"Compensation coverage is not automatically and instantaneously terminated by the firing or quitting of the employee. He is deemed to be within the course of employment for a reasonable period while he winds up his affairs and leaves the premises. The difficult question is: what is a reasonable period?

\*   \*   \*   \*   \*   \*

"The issue of reasonableness may also turn on the question of what the employee was doing during the interval before leaving the premises, and whether his activity bore any relation to his employment or was purely personal. * * *

\*   \*   \*   \*   \*   \*

"On the other hand, it is quite possible for an employee, whose employment has ended, to remain at a place of employment such as a restaurant, taking on the status of customer or member of the public. * * * Moreover, when the employee for a substantial amount of time before leaving is engaged in an unmistakably personal pursuit, such as picking up pieces of coal for his own use, fooling with an unlicensed motorcycle, or playing cards *and drinking,* the interlude is not within the course of employment." 1A Larson, the Law of Workmen's Compensation, § 26.10, pp. 5–285 to 5–292 (1985).

The case of *Blade v. Mervis,* La.App., 226 So.2d 552 (1969), is somewhat similar to this case. There, the claimant, a siding contractor for his employer, finished a job and went to his employer's place of business to collect his pay. While there, he became involved in a card game and began drinking. He continued such activity several hours after collecting his pay. Later he suffered a gunshot wound following an argument over a drink. The Louisiana appellate court denied worker's compensation and stated:

"In the instant case we are satisfied plaintiff was not in the course of his employment at the time he sustained the injuries. As we have pointed out, his stay on the defendants' premises after he had received the checks had no connection whatsoever with his employment or the defendants' business; following receipt of the checks he remained on the premises solely and only for his own pleasure, participation in the card game and the drinking activities in connection therewith. Since he received the checks not later than 1:30 p.m. and the shooting occurred at approximately 4:30 p.m., a lapse of three hours during all of which time he was engaged in the card game, it is abundantly clear that any reasonable period involving preparation for leaving or other similar purposes had expired long before the shooting took place." Id., at 556.

See also the cases of *Knowlton v. Porter Trucking Co., Inc.,* 117 R.I. 28, 362 A.2d

131 (1976), and *Emmel v. State Compensation Director,* 150 W.Va. 277, 145 S.E.2d 29 (1965), in which worker's compensation was denied employees who remained after work to drink and were injured while doing so.

Of further interest is § 27–12–102(a)(xii)(B), W.S.1977 (June 1983 Replacement), which reads in part:

" 'Injury' means any harmful change in the human organism other than normal aging, and includes damage to or loss of a prosthetic appliance and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer, incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. The term does not include:

\* \* \* \* \* \*

"(B) Injury caused by an employee's intoxication or by his willful intention to injure or kill himself or another. \* \* \* "

In *Richard v. George Noland Drilling Company,* 79 Wyo. 124, 331 P.2d 836 (1958), we denied worker's compensation to an employee who was intoxicated and died of asphyxiation while lying near a butane stove. There we stated that: " \* \* \* [A] claimant in an advanced state of intoxication may abandon his employment by making himself incapable of engaging in his duties." Id., 79 Wyo. 136, 331 P.2d 840.

▌ In the present case, Naylor informed his supervisor that he was quitting around 5:30 or 6:00 p.m. At that time, the supervisor testified he believed Naylor was intoxicated. Naylor did not leave the bar until sometime around 8:00 p.m. He was killed when he fell out of his van on the way home. There is no evidence which shows that Naylor was to be paid for the trip home. Even though the company had paid for some of his gas on an intermittent basis in the past, Terry Johnson, president of Railworks, Inc., testified that Naylor was not performing any duties or functions

for the corporation at the time of his death. There was no discussion of gas reimbursement when Naylor and Kukuchka quit.

Payments made by the employer to Naylor for transportation were sporadic, and the purpose of such payments was uncertain. Slight evidence of these payments is insufficient to establish a custom or course of conduct; rather, the payments were a "sometime" thing. Appellant failed to demonstrate that the principles set out in *Matter of Willey, supra,* and *In re Jensen, supra,* apply here.

In the absence of any showing that the employer was to compensate Naylor for his return trip home after quitting, we are unable to find that Naylor was acting within the scope of his employment when he died. Therefore, we are unable to sustain the trial court's determination and award of worker's compensation in this regard. We think appellee has failed to meet her burden of proof.

"We will reverse a factual determination if there is little or no evidence to support the judgment. *Alco of Wyoming v. Baker,* Wyo., 651 P.2d 266 (1982). This is especially true when the evidence is not in conflict.

" 'We think that the nonconflicting evidence here admits of only one conclusion, and a contrary conclusion cannot stand. [Citation.] Even if the evidence here did justify either of two reasonable inferences, this court will reverse the finding if it can say, as a matter of law, that the inference in favor of the party which did not have the burden of proof was more, or at least equally, probable. [Citation.] * * * ' *Murphy v. Stevens,* Wyo., 645 P.2d 82, 83 (1982)." *Matter of Van Matre,* supra, 657 P.2d at 817.

Accordingly, we affirm the trial court's determination that Naylor was an "employee" for purposes of worker's compensation, but reverse the award of worker's compensation since we find Naylor was not within the scope of employment when the accident occurred.

CARDINE, Justice, dissenting, with whom URBIGKIT, Justice, joins.

The trial court found that Naylor was to be paid for travel expenses and was therefore within the course of his employment at the time of his death. As a matter of law, this reasoning was sound. If an employer assumes an obligation to transport a worker as an express or implied part of an employment contract, the employee is within the course of employment during that transportation. *In re Jensen,* 63 Wyo. 88, 178 P.2d 897, 901-910 (1947). It does not matter what method of travel is employed or whether the employee is actually reimbursed for the trip. Id. at 910. If the trial court's premise that the employer assumed an obligation to pay Naylor for his return trip to Sheridan is supported by substantial evidence, then we should affirm the trial court's conclusion that the accident occurred during the course of his employment.

The record contains evidence which shows that the employer assumed a general obligation to provide Naylor's transportation. First, the employer was aware that the workmen needed transportation to Colorado to begin work. The employer testified that he had originally considered transport by company vehicle, but the men proposed to travel in Naylor's van. However, they could not afford to drive to Colorado unless they received money for gas. The employer did in fact pay for the gasoline. Second, Mr. Harbel, Naylor's co-worker, stated that Naylor took the job on the condition that travel expenses would be paid. Finally, several witnesses agreed that Naylor was also reimbursed by the employer for travel expenses incurred on trips to Denver, a round trip to Sheridan to get married, and daily transport to the work site.

The trial court could reasonably infer that the employer's general transportation obligation included an obligation to pay for Naylor's return trip to Sheridan. This is not a situation where the employee was simply commuting from his home to a nearby work site. Instead, Naylor took an ex-

tended work-inspired trip away from his home—the kind of trip which an employer generally subsidizes. In *In re Jensen, supra,* 178 P.2d at 910, we quoted with approval the following statement made by the United States Supreme Court in *Cardillo v. Liberty Mutual Insurance Company,* 330 U.S. 469, 67 S.Ct. 801, 810, 91 L.Ed. 1028 (1947):

" '[T]here was also evidence that the distant location * * *, the hours of work and the inadequacy of public transportation facilities all combined to make it essential, as a practical matter, that the employer furnish transportation in some manner if employees were to be obtained for the job. *This was not a case of employees traveling in the same city between home and work. Extended cross-country transportation was necessary. And it was transportation of a type that an employer might fairly be expected to furnish. Such evidence illustrates the setting in which the contract was drawn.'* " (Emphasis added)

The trial court's conclusion that the employer was obligated to pay for Naylor's return trip to Sheridan was valid even though Naylor quit his job before the trip. In his treatise on Workmen's Compensation, Professor Larson states:

"[W]hen the employee is * * * any worker whose duties include a journey to some distant point in the course of which he is considered within his employment, such an employee, fired in the midst of his journey, remains within the course of his employment as he makes his way back to his starting-point." 1A A. Larson, Workmen's Compensation Law § 26.10 at 5–293 (1985).

This rule should also apply to the worker who quits his job at a distant job site under the circumstances of this case. Wages paid here were incredibly meager and the working conditions so intolerable as to in effect force Naylor to quit his job. An employer who chooses this course of action rather than discharging an employee should not benefit by defeating his worker's compensation claim. In any event,

both the fired worker and the quitting worker presumably went to the site for their employer's benefit. Once they arrived at the job site, the trip home became inevitable—whether they quit under these circumstances, were fired, or stayed on until the project was completed. Since the return trip is a necessary adjunct to the job and the employer has impliedly agreed to pay for it, the worker remains within the course of employment during that trip even if it takes place earlier than expected.

The majority makes much of Naylor's apparent intoxication before he left for Sheridan. But he was not injured while he was in the bar drinking. He was killed several hours later while traveling as a passenger in a vehicle on his way home. Even if he left the course of employment while drinking, he did not necessarily leave the course of employment forever. The issue is whether he was in the course of employment when he died.

There was sufficient evidence for the trial court to conclude that Naylor's employment contract contained an implied term that he be paid for his return trip. He was, therefore, within the course of employment when he was killed. I would affirm the trial court's decision granting benefits.