## THARP v. UNEMPLOYMENT COMPENSATION COMMISSION

(No. 2201; January 20, 1942; 121 Pac. (2d) 172)

For the plaintiff in error there was a brief by *G. W. Bremer* of Worland, *C. A. Zaring* of Basin, and oral argument by *Mr. Bremer*.

488

For the defendant in error there were briefs by *Ewing T. Kerr,* Attorney General, of Cheyenne; *Tom Nicholas* and *James G. McClintock* of Casper, and oral argument by *Mr. McClintock.*

RINER, Chief Justice.

In the district court of Washakie County, Wyoming, the Unemployment Compensation Commission of Wyoming, as plaintiff, instituted an action to recover certain amounts of money against Frank E. Tharp, sole trader, doing business under the firm name and style of Sanitary Barber Shop in the town of Worland, Wyoming. After pleadings were filed, issues made up and trial had to the court without a jury, a judgment was

given in favor of the plaintiff. In the present proceedings in error to review that judgment the defendant Tharp has accordingly become the plaintiff in error and the plaintiff, the defendant in error. For convenience the parties will be referred to hereinafter as aligned in the district court or by their respective names, the defendant in error being designated as the "Commission" and the plaintiff in error, Frank E. Tharp, etc., as "Tharp". The history and material facts of this litigation requiring consideration at this time may be summarized thus:

Since the year 1933 to and including the year 1937, Tharp has been engaged in conducting a barber shop called the "Sanitary Barber Shop" in the Town of Worland. He employed three men as barbers, his brother, Elbert C. Tharp, Frank L. LeFavour and Charles L. Chorum. Each of these men had been in the employ of the defendant and in his barber shop as barbers for a number of years prior to 1937. He himself also worked in the shop and supplied the public with the same sort of service as his employees aforesaid, in addition to his managerial duties.

In connection with the employment status of Tharp and his three employees, as described above, some of the requirements of Chapter 11, Revised Statutes 1931, regulating the practice of barbering in this State, may be appropriately mentioned here. Section 11-103 of that Chapter, as amended by Laws of Wyoming, 1935, Chapter 9, Section 1, provides in part:

"After June 30th, 1931, no person shall practice or attempt to practice barbering as herein defined in the state of Wyoming, without a certificate of registration as a registered barber, procured and issued in accordance with the provisions of this chapter; and after June 30th, 1931, no person shall serve or attempt to serve as an apprentice under a registered barber, without an apprentice's certificate applied for and issued in accordance with the provisions of this chapter; and

after June 30th, 1931, it shall be unlawful to operate a barber shop unless it shall be licensed as provided herein, and is at all times under the direct supervision and management of a registered barber."

The act of our State Legislature thus referred to is designed to improve the sanitary conditions in such establishments, and in order to accomplish this properly, the statute, generally speaking, requires some one holding a shop license to be in charge of such a place and also requires each barber serving in such a shop to have a personal license to render barbering service. A violation of the Act is punishable as a misdemeanor. This statute, as amended by the 1935 Legislature, had been, both before the year 1937 and since then, obeyed by Tharp and his employees aforesaid.

Each of the four men held a personal license as barber, which was displayed near the chair where he worked, but Tharp alone held the barber shop license. He was the lessee of the shop premises and was responsible to the lessor as such lessee.

The twenty-fourth legislature of this State passed certain legislation known as the "Unemployment Compensation Law", which was approved by executive authority February 25, 1937, (Laws of Wyoming, 1937, Chapter 113). The Commission aforesaid was created by that law and is charged with the duty of administering it. This Act undertakes to guard against the evils of unemployment in this State, and a fund for that purpose is provided, which is obtained by enforced contributions collected from employers by the Commission above mentioned. These contributions, generally speaking, are necessarily, under the terms of the law aforesaid, governed by the number of employees and the amount of wages paid them.

Among its extended and elaborate provisions are the following: Section 2 (i) (1), which reads:

" 'Employment', subject to the other provisions of

this subsection, means service, including service in interstate commerce, performed for wages or under any contract or hire, written or oral, express or implied.";
Section 2 (i) (5), whose language is:

"Services performed by an individual for wages shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Commission that—

(A) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

(B) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C) such individual is customarily engaged in an independently established trade, occupation, profession or business.";
Section 2 (n) so far as pertinent here defines "wages" as meaning,

"all remuneration payable for personal services, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash."

The first two sentences of Section 7 of the Unemployment Compensation Act read thus:

"Section 7. (a) (1) On and after January 1, 1937, contributions shall accrue and become payable by each employer for each calendar year in which he is subject to this Act, with respect to wages payable for employment occurring during such calendar year. Such contributions shall become due and be paid by each employer to the commission for the fund in accordance with such regulation as the commission may prescribe, and shall not be deducted, in whole or in part, from the wages of individuals in such employer's employ."

Under date of December 31, 1937, Tharp, as "party of the first part", and LeFavour, as "party of the second part", executed a written agreement, which, omitting sundry preliminary recitals, reads as follows:

"NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter contained, it is hereby mutually understood, covenanted and agreed by and between the respective parties hereto as follows:

"1. That the party of the first part hereby grants a license to the party of the second part to operate and use the Chair No. 1, being the south front chair situate in first party's aforesaid barber shop, and the lavatory used therewith, including such space as may be reasonably necessary hereunder, to practice barbering.

"2. That second party shall furnish the usual and necessary tools to enable him to practice barbering.

"3. That first party shall furnish all necessary towels, soaps, tonics, lotions, powders and the usual and necessary supplies to enable second party to practice barbering at the place aforesaid.

"4. That first party shall furnish proper light, heat and water at the place aforesaid for second party's use hereunder.

"5. That second party shall make, keep and preserve an accurate and complete detailed account of his daily receipts hereunder and shall furnish a true copy thereof to first party, upon request therefor, at the close of business, on each Saturday night, covering the week then ending.

"6. That the word 'week' as herein used shall be construed to mean the time intervening between the commencement of business on Monday morning and the close of business on the next succeeding Saturday night.

"7. That second party shall pay to first party, in money, at the close of business on each and every Saturday night, during the continuance hereof, an amount equal to one-third of all cash received and taken in by said second party from the practice of barbering, during the week then ending.

"8. That no oral or written agreement or understanding, either expressed or implied, other than these presents, exists between the parties hereto relative to any or all of the subject matter hereof.

"9. That this license and all rights and privileges hereunder may be terminated by either party hereto at any time.

"10. That upon the termination of these presents

any money then owing from either party to the other party hereto shall become immediately due and payable.

"11. That neither the relation of master and servant nor the relation of employer and employee shall exist at any time between the parties hereto, during the continuance hereof.

"12. That these presents shall be construed as a license and not as a lease.

"13. That time is of the essence hereof.

"14. That these presents shall not be transferable.

"IN WITNESS WHEREOF, the respective parties hereto have executed these presents, and one copy thereof, as of the day and year herein first above written."

Substantially similar agreements, different chairs and lavatories, however, being designated for the use of the second parties, were at the same time executed by Tharp and Chorum and by Tharp and Elbert C. Tharp. The remaining or fourth chair and lavatory were retained by Tharp himself, with which, as alleged in his answer hereinabove mentioned and admitted as true so far as this matter is concerned, by written stipulation of the parties, to "practice barbering on his own account".

After the execution of these agreements Tharp declined to pay the Commission the contributions required by the Unemployment Compensation Act, aforesaid, his contention being that the three men, LeFavour, Chorum and Elbert C. Tharp, were not his employees within the terms of that Act, that he did not pay them wages, and that they were independent contractors. The Commission accordingly brought an action in the district court of Washakie County, as stated above, to recover the amount claimed to be due. The amended petition of the plaintiff, the amended answer of the defendant and plaintiff's reply made up the issues in the case.

After trial had, as above stated, the court entered its judgment adverse to the defendant Tharp, making cer-

tain findings of fact and conclusions of law. Among the findings of fact were the following:

"(4) That the services performed by the said barbers were under the control or direction of defendant, both under the said agreement and in fact, and such services were in the usual course of defendant's business and within defendant's place of business and that the said barbers were not customarily engaged in an independently established trade, occupation, profession or business.

"(5) That the defendant has owned and operated said barber shop for a period of seven years, and that these barbers have worked in defendant's shop for a period of from five to seven years:

(a) Under oral employment in which they received 66% of their receipts; and

(b) Under this license agreement where they paid defendant 33-1/3% of their receipts."

The second and third conclusions of law announced by the court in its judgment aforesaid were:

"(2) That the services performed by the said barbers are within the definition of the term 'employment' in Section 2-(i) (1) since the defendant has failed to meet the criteria for exemption from the term 'employment' as set forth in Section 2-(i) (5) of the aforesaid Wyoming Unemployment Compensation Law; and

"(3) That the moneys received by the said barbers during the said periods as set forth in 'Exhibit B', attached to and made a part of plaintiff's petition, are wages payable for employment and subject to the contribution levied by the said Wyoming Unemployment Compensation Law."

The controlling question in this lawsuit is whether the barbers aforesaid in plaintiff's barber shop were in the employment of Tharp under the terms of the Unemployment Compensation statute, as the district court found they were and whether there was substantial evidence to support such finding. We are inclined to answer this question in the affirmative after a careful examination of the pleadings and proofs in this case.

It is suggested for Tharp that in sub-division (5) (A) of Section 2 (i) aforesaid the district court was in error in finding that the "services performed by said barbers both under the agreement and in fact" were "under the control or direction of the defendant". We cannot agree with this contention and for several reasons: While the record shows that the barbers in this shop were accorded generally the privilege of selecting the shop's tonics, lotions, powders and other usual supplies which each of the barbers used for his chair customers, Tharp had to pay for them. Obviously, if he thought, or the customers complained, that the articles thus selected were not proper but injurious ones, he (Tharp) could decline to procure them and could insist that the Barbers use those articles for which he was willing to pay. Obviously, too, if the barbers selected articles of this type unreasonably high in price as Tharp would consider to be the fact, when other articles not so expensive would properly serve the same purpose, he (Tharp) could no doubt insist that the less expensive cosmetics, etc. be purchased and used.

Again we refer to paragraph numbered 9 of the "License" agreement, supra, which gave to either party the right to terminate the relationship at will without incurring liability to the other.

In Fox Park Timber Co. v. Baker, 53 Wyo. 467, 84 P. (2d) 736, this court has pointed out that in determining whether the relation of employer and employee exists:

"Another test is whether either of the parties possesses the right to terminate the services at will without incurring liability to the other, this embracing, of course, the right of the employer at any time to discharge the party performing the work, an affirmative answer establishing the status of master and servant." (Citing cases.)

And in the same opinion it was also said:

"As phases of control or right of control may be mentioned the factors: the place where the work is to be performed, the scope of the work and the control of the premises where the work is required to be done. 71 C. J. 458."

The work done by the barbers aforesaid necessarily had to be performed in the shop leased and controlled by Tharp as lessee. As to the scope of the work, Tharp undoubtedly held the right to control that also, for if a barber had undertaken to do, for example, cabinet carpentering in the shop, Tharp could have put a stop to such a practice if he so desired.

Other reasoning of similar purport could be supplied. Finally as the regulatory Barbers Act, supra, requires that the shop must be "at all times under the direct supervision and management of a registered barber", and this under a prescribed penalty for disobedience thereof, who except the lessee of the shop could fulfill this requirement?

By analogy, the case of Lowmiller v. Monroe, 101 Cal. App. 147, 281 P. 433, 282 P. 537, would appear applicable. It there appeared that a statute regulated the operation of real estate brokers, because "public interest" required that brokers should be responsible for the acts of those who aided them in making sales to the general public. In our case the tinge of "public interest" is afforded by the sanitary and health conditions in barber shops demanding regulatory control by the state. The California court in effect held that any attempt to create a relation other than master and servant would have been in violation of the penal provisions of the state law regulating such matters. See also Aetna Casualty & Surety Co. v. Prather, 59 Ga. App. 797, 2 S. E. (2d) 115. Other authorities of similar purport could readily be supplied.

So far as the provisions of (5) (B), supra, are concerned, it is evident the services of the barbers had to

be performed in the shop premises leased by Tharp and nowhere else. Also they had to be in the "usual course of the business" for which such service was performed, i. e., the barbering business, which under the Barbering Act was subject to supervision and control by Tharp, as already discussed. Each barber contributed from his earnings to Tharp in maintenance of that business.

The barbers in question were not in this case "engaged in an independently established trade, occupation, profession or business". Under the License agreement Tharp bought their supplies, furnished them light, heat, water and a place to work and equipment vital to the carrying on of their business, i. e., chairs and lavatories, they supplying only the less expensive tools of their profession. This disposes of the requirement (5) (C) supra.

Relative to the matter of wages, the proof is that before the License agreement was executed, Tharp paid these barbers 66% of the shop's income. After the execution of said agreement they paid Tharp 33-1/3% thereof and retained approximately the same compensation as before.

A quite recent case (opinion filed August 4, 1941) decided by the Supreme Court of Iowa, would appear to be in point just here. In Kaus v. Unemployment Compensation Commission, 230 Iowa 860, 299 N. W. 415, the facts were briefly, that the plaintiff operated a taxicab business under an oral agreement with the cab drivers, whereby the plaintiff furnished cabs, oil, switchboard service, city license to operate cabs, and insurance on the drivers protecting the public, and the drivers furnished gasoline and paid plaintiff the sum of $3.00 for each twelve hour period that the cabs were in use, and retained as their compensation all sums collected from the passengers in excess of the $3.00 and cost of the gasoline. The plaintiff indicated which

shift the drivers should have and discharged those whose services were unsatisfactory. The drivers could refuse calls and use cabs for personal use.

Holding that an employer and employee relationship rather than a bailor and bailee relationship existed between the plaintiff and the drivers and that the plaintiff was liable for contributions under the Iowa Unemployment Compensation Act, which presents phraseology closely resembling the Wyoming law, the Court said:

"Nor is the fact that the drivers are not paid a stated wage by appellee necessarily inconsistent with the claim made by the commission. It is to be noticed that the statutory definition of the term 'wages' contained in the law (sec. 1551.25-M) is 'all remuneration payable for personal services, including commissions', etc. It is not required that the remuneration be paid by the employer. It has frequently been held that payment by the employer is not necessary. Remuneration of an employee may consist of the difference between the price which he pays his employer for goods and the price at which he sells them, a percentage of the sale price of goods sold by the employee to customers and collected by him from them, and various other methods of collecting compensation from customers rather than directly from the employer. Jones, Collector, v. Goodson and Scott, 10 Cir. 121 F. 2d 176, and cases cited; In re Morton, 284 N. Y. 167, 30 N. E. 2d 369; Glielmi v. Netherland Dairy Co., 254 N. Y. 60, 171 N. E. 906; Jack & Jill, Inc., v. Tone, 126 Conn. 144, 9 A. 2d 497; Indian Hill Club v. Industrial Commission, 309 Ill. 271, 140 N. E. 871; Powers' Case, 275 Mass. 515, 176 N. E. 621, 75 A. L. R. 1220. The earnings of the drivers over and above the $3.00 and cost of the gasoline constitute the remuneration or wages for their services and it is not necessary that they be paid directly by appellee."

Certain constitutional questions are suggested which are not mentioned in the pleadings of the parties and which were not submitted to the trial court until the motion for new trial was filed in that court, at which time they first appeared in the litigation.

It is urged for Tharp that if the Act in question should be applied "so as to include independent contractors and others not within the employer-employee relationship, would not similar constitutional questions arise as were applied in the Wyoming case of Weaver v. Public Service Commission, 40 Wyo. 462?" Inasmuch as the trial court found that the relationship shown by the record in the case at bar was that of employer-employee, and we have concluded that there was substantial evidence to sustain such a finding, there is no need here to consider the constitutional questions thus submitted. Besides, this court has said in Salt Creek Transportation Co. v. Public Service Commission, 37 Wyo. 488, 263 P. 621,

"Constitutional questions are too important to be answered by this court at random, and they should not be answered unless fully presented."

See also Roy v. Kansas City, 204 Mo. App. 332, 224 S. W. 132, 137.

The judgment of the district court of Washakie County should be affirmed.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.