## HICKS v. GILLESPIE.

1. APPEAL AND ERROR—CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW—EVIDENCE.
   Facts must be viewed in the light most favorable to plaintiff on defendant's appeal, where defendant asserts plaintiff was guilty of contributory negligence as a matter of law.

2. AUTOMOBILES — CONTRIBUTORY NEGLIGENCE — INTERSECTION OF GRAVEL ROADS.
   Whether or not eastbound plaintiff motorist was guilty of contributory negligence was properly left to jury, where it appears he looked to the left before and as he crawled slowly

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 952.
[2] 5 Am Jur, Automobiles § 715.
[3] 5 Am Jur, Automobiles §§ 673, 703.
[4] 5 Am Jur, Automobiles § 169.
[6] 15 Am Jur, Damages § 71 et seq.
[6] Excessiveness of damages in action by person injured for personal injuries not resulting in death (for years 1941 to 1950). 16 ALR2d 3; Adequacy of damages in action by person injured for personal injuries not resulting in death (for years 1941 to 1950), 16 ALR2d 393.

onto intersection with 24-foot gravelled portion of road on which defendant southbound motorist approached at high rate of speed and view of plaintiff to the north was more or less obscured by fence-row bushes and vines, plaintiff's attention was momentarily diverted to a whirlwind of dust to the south and plaintiff's car had proceeded well into east half of intersection on south half thereof when struck by defendant's car and knocked some 40 to 50 feet beyond the south edge of the road.

3. Same—Negligence—Intersections.

The matter of negligence of 2 colliding motorists at an intersection involves a determination of reasonable care under all relevant circumstances including the condition of the intersection involved, the nature and condition of the intersecting roads and the conduct of the motorists with respect thereto.

4. Same—Anticipation of Reckless Conduct on Part of Another Motorist.

One motorist is not required as a matter of law to anticipate reckless or unlawful acts, such as excessive speed or driving on wrong side of road, on part of another motorist approaching the same intersection.

5. Same — Proximate Cause — Evidence — Mathematical Arguments.

Eyewitness accounts of an accident may not be replaced by mathematical arguments as to causative factors involved in an automobile collision at an intersection so as to remove a case from a jury's consideration, where it is difficult to choose between inconsistent or contradictory statements in determining the factual postulates upon which the computations must be based.

6. Damages—Cerebral Concussion—Fractured Vertebra—Pain and Suffering—Earning Capacity.

Verdict and judgment of $25,000 to plaintiff *held*, not excessive, where he suffered cerebral concussion, a fractured vertebra and other extensive and permanent injuries and prolonged and severe pain, had $1,700 hospital and doctor bills, had an earning capacity of $150 to $160 per week and had not been able to return to work about 3 years after the accident.

Appeal from Genesee; Elliott (Philip), J. Submitted June 6, 1956. (Docket No. 18, Calendar No. 46,673.) Decided September 4, 1956. Rehearing denied December 4, 1956.

Case by George A. Hicks against Robert A. Gillespie, as administrator of the estate of Richard Gillespie, deceased, and individually as owner of motor vehicle involved in collision, for resulting damages. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Clifford B. Dye,* for plaintiff.

*Gault, Davison & Bowers,* for defendants.

SMITH, J. We have here a negligence case. It arises out of a collision at the intersection of 2 rural roads. The defendant appeals a jury verdict. (Defendant Robert A. Gillespie is the owner of one car involved in the accident, and is sued both individually and as administrator. We will use the word "defendant," in the singular, and "defendant's" car throughout this opinion for purposes of clarity.) Defendant asserts primarily that plaintiff was guilty of contributory negligence as a matter of law.

On August 19, 1951, plaintiff was driving eastward on Calkins road in Genesee county, Michigan. It was about 6 o'clock in the evening on a sunshiny clear Sunday. Plaintiff was driving a new (3 weeks and 2 days old) car. His wife and 14-year-old daughter were beside him in the front seat. The 5-year-old was on the back seat, asleep. The road was gravel, it was rough, and he drove slowly, "didn't stir up any dust." (We will state the facts, as they must be viewed, in the light most favorable to the plaintiff.)

They approached Linden road, a north-south highway, also gravelled, also rough, a road of equal importance, equal rank. The intersection of the 2 roads was hazardous in the extreme. To plaintiff's left, north of the intersection, on the west side of Linden, were fence rows, brush, vines, several large

trees and, about 250 feet north of the intersection, a large bush which hung over a part of the westerly half of the road. This bush figures prominently in the testimony. To the south the situation was even worse. The fence row "sticks out 7 feet further on the right side of the road than it does on the left" and there were "bushes, briars, vines and old fence posts leaning over." In addition, there was a "jog" in Linden to the plaintiff's right, south of the intersection.

As plaintiff approached the intersection he slowed down "to just about a stop." At this point he could see north about 45 feet. The road was clear. Cautiously he moved into the intersection ("crawled" is the word his wife uses, "we crawled out, crawled up around, but you couldn't see anything that way until you got your car out"). By the time his car was "sticking out about 7–8 feet into Linden road," he could see to the north all the way up to the big bush, about 250 feet away. No car, he says, was visible. Still proceeding at a slow speed ("between 3 and 4 miles an hour") he continued on his course across the intersection, now looking to his right. The bushes, vines, and old fence posts blocked his vision south, "so I pulled on out more so I could see down there because as I approached I saw a lot of dust." "Is that a car coming down there?" he asked his wife. "No," she answered, "it is just a whirlwind." By the time he could see to the right all the way down Linden road, the front of his car was past the center line of the intersection. Plaintiff's car was 17 feet long and Linden was only about 24 feet wide in the gravelled or graded portion. As he turned his observation, then, to his left, he observed a car approaching him (the Traycik car) from the east, following which his wife screamed. "I looked to the left that quick, this car (the defendant's) was coming sideways, he had crossed the

center of the road." He heard, he says, "an explosion." That was the last he remembers. His car was struck on the left side, just in front of the left hand door, at a time when his driver's seat was past the center of the intersection. His car was "knocked into the air," not rolled, to a spot some 40 or 50 feet beyond the south edge of Calkins road one end being driven into the ground. Plaintiff suffered serious injuries, for which he seeks recovery in this action. These are the main outlines. Additional facts will be referred to as required by our discussion of the law.

The defendant takes a broad position. This Court has "consistently held for many years," he asserts, "that when an accident occurs at an intersection of 2 rural roads of equal importance that both drivers are guilty of negligence and neither can recover as a matter of law." One exception, only one, is conceded: where the collision is caused by defendant's change of speed or course after plaintiff, who having seen the oncoming car, has formed his reasonable judgment as to defendant's speed and distance. Applying to the case before us this asserted "consistent holding," defendant's position is clear: Plaintiff here did not see the defendant until the instant before the crash, obviously he could not have formed a reasonable judgment as to defendant's course and speed, therefore he cannot recover.

Unfortunately for the process of decision, the law is not so simple. The matter of negligence involves a determination of reasonable care under the "same or similar circumstances" and in the consideration of circumstances we go beyond the mere fact that we have an intersection, and beyond a consideration of defendant's original course and speed. We consider all of the relevant circumstances, which include, among others, the condition of the intersection itself, the nature and the condition of the intersecting roads,

and the conduct of the motorists with respect thereto.

Defendant's most serious contention is that "the plaintiff made no effort to maintain an observation for traffic approaching from his left or from the north during the time that he was crossing the west portion of Linden road." It will be recalled that plaintiff looked to his left as he approached the intersection, again at the edge of the intersection (at which time he could see only 45 feet to his left, and again when his eye reached the point where he could see north, about 250 feet, to the overhanging bush). At this point the front of his car was well (by 7 or 8 feet) into the 24-foot width of the gravelled portion of the Linden road. From this point, however, he did not have a clear vision south on Linden, although he could see, in that direction, a "lot of dust." The front of his car was "past the center line" before he had clear vision south on Linden road and could perceive that the dust was not due to automobile traffic. When he was struck the driver's seat of plaintiff's car was past the center of the intersection and the defendant's car was on the east side (his wrong side) of the road.

Should the plaintiff, as a reasonably prudent driver, have disregarded the dust cloud to his right and confined his attention to his left as he crossed the west half of Linden road? He had assured himself that the road to his left was clear for 250 feet. He was offered no threat from that direction for a few seconds if a driver coming from the north were driving at a reasonable rate of speed. On the other hand, if a southbound car were coming at 70 miles per hour or upwards, it is doubtful whether (considering the time required for physical and mental reactions, *Morton* v. *Peterman*, 291 Mich 442) any reasonable action on the part of its driver could have brought it to a stop in 250 feet. See 9C Blashfield,

Cyclopedia of Automobile Law and Practice (Perm ed), § 6237. At the same time the dust cloud to the south might well have given warning of a vehicle offering imminent danger of collision from that direction.

Under these circumstances it became a jury question whether it was reasonable for plaintiff to resolve the possible danger from the south at the expense of diverting his observation from the north. We are clear that as a matter of law the plaintiff was not required to anticipate reckless or unlawful acts on the part of the defendant. As we said in *Krause* v. *Ryan,* 344 Mich 428, 432:

"Lacking notice otherwise he may assume that others using the highway will comply with the rules of the road and properly posted signs and he is not guilty of contributory negligence in acting upon such assumption."

Nor was plaintiff required to anticipate the swerving, by an intersecting car, across the highway to the wrong side of the road (*Gibson* v. *Traver,* 328 Mich 698), nor a driver's failure to have his car under such control that it could either have been brought to a stop before striking a car which had preceded him into an intersection, or steered around the rear of plaintiff's car. It is clear on the record that defendant's car was out of control. It swerved, "it went back and forth a time or two," and the wheels "were bouncing up and down, back and forth." Just prior to impact defendant's car "was kind of sideways" and the driver, *in extremis,* "seemed like he had his right arm up over his face." We are not disposed to interfere with the jury's verdict.

But there is another aspect of this case raised by plaintiff which should not go unremarked, the matter of causation. We will assume (and this is a violent assumption) that plaintiff was under a duty

to ignore the dust cloud to his right and confine his observation to his left as he crossed the west half of Linden road although no car was visible therein for a distance of 250 feet. Even under these circumstances is defendant's case advanced? Plaintiff was not, after all, struck in that part of the highway from which danger might have been expected. He was struck while in the southeast quadrant by a car which had crossed the center line to the wrong part of the road. Under such circumstances did plaintiff's failure to make observations to his left have a causal connection with the accident that actually happened, as distinguished from that which might have happened? Again we rely upon the jury. As was said in *Gleason* v. *Lowe*, 232 Mich 300, 304: "It was a question of fact for the jury whether there was any causal connection" between plaintiff's assumed violation and the injuries suffered.

It was also the jury's function to choose between inconsistent or contradictory statements on the part of the witness. As bearing on the truth or falsity of their assertions we have fully considered the mathematical arguments advanced by defendant, involving the proposition that Mrs. Hick's testimony required of defendant's automobile an impossible speed, travel at "approximately 83 times as fast as plaintiff's automobile," and involving the fence post located 35 feet from the center of the intersection. We have plotted these bearings and distances carefully, to scale, but our performance leaves us only the more impressed with the value of the jury's conclusions in a case of this kind. The difficulty with mathematical arguments is the difficulty of the factual postulates upon which the computations must be based. Even in the seclusion of the laboratory the problem of accurate measurements is basic. But here the logarithmic plotting sheet of the laboratory becomes a section of a country road, the distances

marked not by the precise squares of a rules sheet but by uncertain bushes and fence posts; here we must substitute, for the calm of scientific detachment, the agony of the split second preceding disaster; and in the very case before us the silence of the laboratory is replaced by the scream of the wife and the "explosion" of impact. We are reluctant to permit computations so reached to impeach the eyewitnesses.

Finally, the matter of damages. The proofs showed a cerebral concussion, a fractured vertebra, and other extensive injuries. There was prolonged and severe pain, requiring "large doses of opiates and sedatives to calm him." To some degree the injuries are permanent. There was testimony from which the jury could have found that the reasonable value in the open market of the services that plaintiff could and did render prior to his injuries, and which because thereof he could not thereafter perform, was between $150 and $160 per week (*Seabury v. Detroit United Railway*, 194 Mich 423). Plaintiff had not been able to return to work at the time of the trial, in May of 1954. His hospital and doctor bills came to over $1,700. We cannot, upon this record, hold the jury verdict of $25,000 to have been excessive.

We have examined the remaining allegations of error including alleged error in plaintiff's argument, and find them without merit.

Affirmed. Costs to appellee.

DETHMERS, C. J., and SHARPE, EDWARDS, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.