Katherine BRUBAKER, Appellant
(Plaintiff below),

v.

GLENROCK LODGE INTERNATIONAL ORDER OF ODD FELLOWS, Appellee (Defendant and Third-Party Plaintiff below),

v.

William LYTHGOE, dba Lythgoe Construction, Appellee (Third-Party Defendant below).

No. 4280.

Supreme Court of Wyoming.

Sept. 6, 1974.

Edward E. Murane and G. G. Greenlee of Murane, Bostwick, McDaniel, Scott & Greenlee, Casper, for appellant.

J. E. Vlastos of Cardine, Vlastos & Reeves, Casper, for appellee Glenrock Lodge International Order of Odd Fellows.

Donald R. Winship of Everett, Everett, Winship & Kastanek, Casper, for appellee Lythgoe.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE, and McCLINTOCK, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

This is an appeal by plaintiff, appellant herein, from an adverse judgment based upon the jury's verdict in a suit against the Glenrock Lodge of the International Order of Odd Fellows, defendant and third-party plaintiff below, and William Lythgoe, dba Lythgoe Construction Company, third-party defendant, appellees here.

Plaintiff filed her complaint against the lodge, as defendant and owner of the premises which she had leased, for injuries suffered on October 17, 1968. The lodge brought Lythgoe into the suit by virtue of a third-party complaint, alleging that if there were any recoverable negligence it should be indemnified by Lythgoe for the loss, and plaintiff afterwards filed an amended complaint joining Lythgoe as a defendant.

The issues and claims of the parties were defined by the trial court by virtue of certain pretrial memorandums made a part of the pretrial order. Stated most summarily they are as follows:

Plaintiff claimed that Lythgoe as an employee of the lodge negligently moved and installed a stairway which collapsed causing plaintiff's injuries; that the lodge negligently permitted the stairs to come loose and fall; that the lodge was negligent in failing to inspect these stairs and to discover their condition and to keep them in reasonable repair; and that defendants' negligence was the proximate cause of her injuries.

The defendant lodge answered with a general denial and asserted the defenses of assumption of risk, contributory negligence, and unavoidable accident, and asserted alternatively that if there was any actionable negligence it was not that of the

lodge. Lythgoe adopted the statement of issues and defenses as set out by the lodge.

The factual situation from which this cause arises is briefly as follows:

The lodge, which owned the building in Glenrock, leased the basement of the building to plaintiff for the operation of a store. Prior to the execution of the lease, but in conformity with verbal negotiations and agreements, the lodge made certain repairs and did some remodeling to make the premises suitable for plaintiff's use. Among the changes made was the rearrangement of the stairway which led from the first floor into the basement from the west end of the stairwell to the east end, which was specifically requested by the plaintiff. This was done by Lythgoe on March 17, 1968. A written lease was executed by the parties on June 1 and the plaintiff moved into the premises on or about July 1, 1968. She continued the use of these premises under her lease and on October 17, 1968, while she and Mrs. Hendricks, an employee, were engaged in moving merchandise to and from the basement, the stairs collapsed and plaintiff suffered grievous injuries. Plaintiff, who had just been to the basement, met Mrs. Hendricks upon the stairs and just about the time she reached the top Mrs. Hendricks said something about the stairs "feeling funny." Plaintiff turned to go down these stairs to see what was the matter and immediately upon her stepping upon the top step the stairs collapsed, precipitating her into the basement. The factual details of the moving of the stairway and the details of the remodeling which was accomplished will be mentioned hereafter where they are material in the disposal of some of the issues in this appeal.

Appellant herein raises five contentions of error in her appeal—the first being prejudicial error of the court during trial, which covers the exclusion of certain expert testimony. The remaining four errors alleged have to do with instructions and will be discussed under that heading.

## EXCLUSION OF TESTIMONY

The first error asserted by appellant is in connection with the refusal of the trial court to allow an expert to answer a hypothetical question to which the judge sustained an objection on the basis that the hypothetical question assumed a fact not in evidence. This being based solely upon the factual situation appearing in the record without any question of law being involved, a disposal of this would be of no value because this question will undoubtedly not reoccur.

## INSTRUCTIONS

Appellant asserts error in giving Instruction 5 which submitted the question of plaintiff's contributory negligence to the jury on the basis there was not sufficient evidence to permit the jury to consider this question.

The facts concerning the use of the stairs and the claimed warning are earlier set out. Mrs. Hendricks was unable to define what she meant by her statement that the stairs "felt funny." She did not believe Mrs. Brubaker responded, although she might have. Plaintiff said she understood Mrs. Hendricks to say there was something wrong with the stairs and that she would construe it as some type of warning, although she felt nothing and wanted to see what was wrong when she started down again. Immediately upon her stepping upon the top stair the stairs fell.

■■ We have heretofore held in the case of Gish v. Colson, Wyo., 475 P.2d 717, 718, that it is prejudicial error to give an instruction on contributory negligence if this is not supported by substantial evidence. Thus, we are directly faced with a determination of whether this evidence will sustain an instruction on contributory negligence. It has been held in Murphy v. Petrolane-Wyoming Gas Service, Wyo., 468 P.2d 969, 976, as follows:

" * * * Apparently the court assumed that if one is advised of a problem not routine nor transient he is thereby in-

formed of danger. We think such assumption is unwarranted and erroneous. A plaintiff who exposes himself in disregard of warnings when an ordinarily prudent man similarly situated would not is guilty of negligence but such a warning must be definite in order to be properly considered as informing him of the danger, and when the facts are undisputed the contributory negligence becomes a matter of law."

In the earlier case of Loney v. Laramie Auto Co., 36 Wyo. 339, 255 P. 350, 354, 53 A.L.R. 73, we recognized the necessity that the one charged with contributory negligence must appreciate the danger even if advised of some defects. This evidence reveals no definite warning—Mrs. Hendricks only stated the steps "felt funny." She did not say they were faulty nor that they had wabbled or swerved. This warning was of such indefinite character that it cannot be used as the basis for a claim of contributory negligence. The plaintiff started down only to see what was wrong and not in anticipation of any danger. A statement appearing in Post v. American Cleaning Equipment Corporation, Ky., 437 S.W.2d 516, 520, clarifies our view:

" * * * We think the gauge for testing appellant's contributory . negligence must be read in the light of the sufficiency of the warning to apprise him of the severity, gravity, and extent of the danger. .* * * "

The lodge relies upon this testimony and additionally upon Rookstool's testimony, the expert who testified that in event the stairs loosened by raising the bottom of the steps this would be evidenced by a showing of physical damage starting long before the nails came out; that a gap would appear between the horses and header; and the steps would slant forward in a noticeable manner. This expert opinion is in the face of unimpeached and positive testimony that there had been no noticeable defect in the stairs on the part of the plaintiff or Mrs. Hendricks. Plaintiff cannot be charged with negli-

gence for a condition which was not present or if not alerted by a proper warning. Rookstool's testimony of a noticeable slant may have been a recognition of what the witness described as "feeling funny," which we have already held would not constitute substantial evidence. We do not deem this to be a conflict in the evidence under the peculiar factual situation in this case. It has been held that mathematical computation of an expert should not be allowed to impeach an eyewitness, Hicks v. Gillespie, 346 Mich. 593, 78 N.W.2d 145, 149. It has been recognized that opinion testimony of experts cannot prevail against direct factual testimony as evidenced by the statement appearing in In re Kadilak's Estate, 405 Pa. 238, 174 A.2d 870, 873:

"Moreover, opinion evidence of an expert, whether he be a doctor or any other kind of expert, is, in cases of forgery, undue influence, mental capacity and insanity, of very little weight and cannot prevail against direct factual credible evidence. [Citations.]"

In that case it was held that the conflicting testimony of the expert did not raise a substantial or material issue of fact. See Atchison, Topeka & Santa Fe Ry. Co. v. Hamilton Bros., 8 Cir., 192 F.2d 817, 822; Hollis v. Industrial Commission, 94 Ariz. 113, 382 P.2d 226, 228. There is a statement which the writer believes applicable herein appearing in Tolle v. Higgins Industries, 212 La. 173, 31 So.2d 730, 733, where in discussing the question of whether direct testimony could be overcome by an expert's conclusions the court said:

" * * * Theoretical possibilities cannot outweigh direct testimony because of their uncertainty. * * * "

It is our opinion that the so-called warning and expert opinion are not substantial evidence as would have raised the question of plaintiff's contributory negligence and therefore resulted in prejudicial error.

Appellant further contends that the court erred in giving Instruction 6 which limited as the only issue the negligence of the defendants in the installation of the

stairs and whether they were negligently installed by William Lythgoe, dba Lythgoe Construction. Her argument in connection with this instruction asserts additional bases for a claim against the lodge for the negligent use of the stairs by moving heavy objects over them prior to the occupation of these premises and by its failure to inspect the stairs following such use. We find no evidence in the record which would justify this as a separate basis for liability, and if such use would occasion the loosening of these stairs it would appear that this could only have been resultant from negligent and unskillful installation of the stairs and that in the state of the evidence in the record to have submitted this issue as contended by appellant would have been to allow the jury to speculate and conjecture as to the effect of this use. This will be later discussed.

Appellant excepted to Instruction 10 of the court, which defined an independent contractor, and to Instruction 11, which made the determination of this relationship a condition of liability and submitted an instruction which was refused by the court that William Lythgoe was an employee of the Glenrock Lodge and not an independent contractor. Appellant insists that because of the undisputed testimony the court should have found as a matter of law that Lythgoe was such an employee and not an independent contractor. The only evidence upon this question came from Simon, who was one of the three trustees of the lodge and was familiar with the dealings between Lythgoe and the lodge. Simon testified as follows:

That Lythgoe was employed and was to be paid by the lodge at an hourly rate; that he did not know if Lythgoe could hire assistants but supposed he did so but added that he was never given that authority by the lodge as it was never mentioned. Lythgoe did not furnish materials or supplies; had no right to control the progress of the work, and there was no agreed time for completion; that when Lythgoe finished some portion of the work

they would talk it over in the lodge and the lodge could have terminated his empolyment at any time. The lodge had the right to control and supervise his work. He also testified the lodge paid for the materials and no one but the lodge controlled the premises during this remodeling and the lodge had the right to tell Lythgoe what to do during the process of his work.

Lythgoe does not contradict any of this testimony. He testified he was employed by the lodge to do some carpentry work at $5.00 per hour, that he did not direct the work done by the other members helping. He was not asked to oversee the work and it was never mentioned he would be straw boss or oversee the job. He kept account of his work. He does not contradict Simon, who did not testify positively as to whether he had authority for hiring assistants, saying in answer to such question: "That was never discussed but I figured I didn't have, because they hired me, and I never had the----." He had no right to control progress of the work and there was no set time for completion. It was determined at the lodge meetings what should be done and he did not have the right without permission of the lodge to hire any assistant or another carpenter. If he had been half finished when the lodge decided to hire someone else to do the work he would have submitted a statement for the work done up to the time and would have had no claim against the lodge. He supposed the lodge had the right to tell him what to do on the job and that insofar as he was concerned the lodge had control of the entire project.

We have held in Tyler v. Jensen, 75 Wyo. 249, 295 P.2d 742, 749, that ordinarily the relationship of master and servant is one of fact for jury determination but that where there is no dispute as to the facts surrounding the contract and a reasonable inference can be drawn therefrom, it then becomes a question of law for the court to decide. In light of these undisputed facts as developed from this testimony we can see no other reasonable inference that might be drawn therefrom and he was not

an independent contractor under our previous decisions later discussed. We are of the opinion the trial court should have withdrawn this question from the jury and determined it as a matter of law.

The question of the distinction between an independent contractor and an employee has been the subject of consideration in several Wyoming cases leaving clear guidelines to be used in determination of the existence of this relationship. In the case of Fox Park Timber Co. v. Baker, 53 Wyo. 467, 84 P.2d 736, 743, 120 A.L.R. 1020, this court set down a rather complete set of guidelines or tests for determination of this relationship. Summarized they are as follows:

(1) Retention of the right of control whether the work is done by the piece or done for a fixed lump sum.

(2) control of the premises where the work is done.

Particularly do we find the following statement from that case appropriate herein:

"* * * Another test is whether either of the parties possesses the right to terminate the services at will without incurring liability to the other, this embracing, of course, the right of the employer at any time to discharge the party performing the work, an affirmative answer establishing the status of master and servant. * * *"

Tharp v. Unemployment Compensation Commission, 57 Wyo. 486, 121 P.2d 172, 176, repeats the Fox Park tests, placing emphasis on the right to terminate without incurring liability.

Following these decisions Tyler v. Jensen, supra, emphasized the importance of the right of control.

Had the jury found Lythgoe to be an independent contractor this court would have experienced extreme difficulty in reconciling such finding with our earlier definition of an independent contractor as follows:

"* * * 'An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work. * * * A contractor, obviously, is one party to a contract or one who has contracted to do or perform certain work.' Chapman v. Edwards, 133 Cal. App. 72, 76, 24 P.2d 211, 213." Lichty v. Model Homes, 66 Wyo. 347, 211 P.2d 958, 967.

The undisputed facts herein could not be squared with the lack of control, nor are they consistent with the performance of certain work, the record showing this was determined from time to time.

Although this was improper, we cannot say it was prejudicial error. Since the jury's verdict was generally against plaintiff there was no necessity for the jury to consider this relationship.

The appellant raises some argument as to the propriety of Instruction 11, which is related to Instruction 10 insofar as the independent contractor and employee issue was concerned, but no discussion of this procedural instruction is necessary because of our views expressed in regard to Instruction 10.

## DEFENDANT LODGE'S LIABILITY

If appellee lodge were correct in its contention that plaintiff cannot recover for these injuries upon her claim under any circumstances because of the generally recognized rule which is set out in its offered Instruction "A," which was refused by the court, it would not be necessary to consider the other questions herein discussed. Instruction "A" was as follows:

"YOU ARE INSTRUCTED that an owner of premises leased to a tenant is not liable for any injury to the tenant that results from a dangerous condition of the premises which existed when the tenant took possession.

"However, if when the tenant took possession of the premises there was some unsafe condition of which the owner had actual knowledge but which was not

known to the tenant and the danger of which was not apparent and was not such as would have been discovered by a reasonable inspection of the premises, the owner was under a duty to inform the tenant of the danger and, if the owner failed to do so, he is subject to liability to the tenant for injuries resulting from such unsafe condition."

This rule, however, in its broadest application has not been immune to attack and exceptions, and we would be most hesitant to extend its application beyond its narrowest limits.[1]

The lodge places heavy reliance upon the case of Hefferin v. Scott Realty Co., 71 Wyo. 114, 254 P.2d 194. This case is inapplicable because of the factual situation. It may be said to have held that when a lessor makes repairs during the term of a lease gratuitously and without consideration he is not liable for improper or negligent repairs. The basis of that decision is clearly demonstrated by the following, 254 P.2d at 197:

" * * * In the case at bar, the promise made by the landlord herein was wholly gratuitous and was not binding upon it. * * * "

The situation in the present case is much different. These repairs and remodeling were undertaken as an inducement and as a consideration for the entry into the lease so the premises might be used by plaintiff in the conduct of her business.

There is abundance of authority that when the lessor has agreed or covenanted to repair the premises during the tenancy he has a duty to exercise reasonable care and is liable for the negligence of himself or servants.[2] Prosser suggests that it is the contract itself which gives rise to a tort liability,[3] and this is also the view of Tiffany previously cited. The basis of this responsibility is upon his undertaking to make the repairs. If this rule be tenable this writer has difficulty in making a realistic or logical distinction and cannot reconcile the theory that lessor might escape liability for its negligence occurring prior to entry of the tenant when it had complete control of the premises and work and still might be held liable for its negligence arising after the occupancy of the tenant if the work had been performed negligently under such an agreement.

A tort liability must be based upon a duty. It may arise from a duty imposed by statute, by common law, or by virtue of a contract relationship, Colton v. Foulkes, 259 Wis. 142, 47 N.W.2d 901, 903–904, and authorities cited; Pipe Welding Supply Co. v. Gas Atomospheres, Inc., D.C.Ohio, 201 F.Supp. 191, 201. This is clearly expressed in Weeg v. Iowa Mutual Insurance Company, 82 S.D. 104, 141 N.W.2d 913, 916, wherein the following appears:

"Conduct that is merely a breach of contract is not a tort. The contract, however, may establish a relationship demanding the exercise of proper care and acts and omissions in performance may give rise to a tort liability. [Citation.] The rule is thus stated in Shearman & Redfield, Law of Negligence (6th Ed.) § 116, as follows: 'Negligence which consists merely in the breach of a contract will not afford ground for an action by any one, except a party to the contract, or a person for whose benefit the contract was avowedly made. * * * But where, in omitting to perform a contract, in whole or in part, one also omits to use ordinary care to avoid injury to third persons, who, as he could with a slight degree of care foresee, would be exposed

1. Reste Realty Corporation v. Cooper, 53 N.J. 444, 251 A.2d 268, 272, 33 A.L.R.3d 1341; Restatement of the Law Second, Torts 2d, § 357; 2 Powell on Real Property, § 233 [1], p. 301 (1973).

2. Saturnini v. Rosenblum, 217 Minn. 147, 14 N.W.2d 108, 163 A.L.R. 294, 298, and cases cited in annotation, p. 317, et seq.; 52 C.J.S. Landlord and Tenant § 417(12), pp. 78 and 79, and cases cited thereunder; 1 Tiffany, Landlord and Tenant, § 87, p. 608 (1912), indicating this doctrine has had long recognition.

3. Prosser, Law of Torts, p. 410 (4th Ed.).

to risk by his negligence, he should be held liable to such persons for injuries which are the proximate result of such omission.' "

 A contract may create a relationship from which arises the duty to exercise ordinary care, Pinnix v. Toomey, 242 N.C. 358, 87 S.E.2d 893, 898; Clark v. Dalman, 379 Mich. 251, 150 N.W.2d 755, 760; and when the lodge agreed to this remodeling its duty to use ordinary care arose.

This duty was emphasized by the character of the work. A defective or negligently anchored stairway must be considered as potentially dangerous as demonstrated by the facts herein. This writer finds most applicable the statement by Mr. Justice Cardoza in that landmark, oft-cited case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, 1055:

> " * * * If danger was to be expected as reasonably certain, there was a duty of vigilance, and this whether you call the danger inherent or imminent. * * * "

This guiding principle is cited and followed in Hale v. Depaoli, 33 Cal.2d 228, 201 P.2d 1, 3, 13 A.L.R.2d 183, which recognizes application to a defectively constructed stair railing; and the case of Leigh v. Wadsworth, Okl., 361 P.2d 849, 855, which cites MacPherson with approval and which holds a defectively constructed porch roof may be so imminently dangerous as to require the submission of this question to a jury, and that defendant having undertaken this duty must be responsible for its careful and proper performance. A defectively constructed grandstand has been held imminently dangerous, McCloud v. Leavitt Corporation, D.C.Ill., 79 F.Supp. 286, 290.

In the case of Dean v. Hershowitz, 119 Conn. 398, 177 A. 262, 266, the tenant who had leased the premises upon reliance on the landlord's agreement to replace the floor of the front porch was allowed recovery where lessor failed to make this repair, the court basing this liability upon the duty imposed by law by virtue of the agreement of the parties, and saying that negligence may be the outgrowth of precedent and contractual relationship.[4] We find this case most convincing because of the similarity of factual situations.

 Plaintiff's contention raised in her argument in connection with Instruction 6 that there were other bases of liability besides the negligent construction is not justified because it is our view that if these stairs were made less safe, not by the unskillful or negligent construction but by the use and failure to inspect, the principle enunciated in the first paragraph of offered Instruction "A" prevents recovery.

 From what we have said and based upon the agreement of the lodge as a condition of entering the lease to make certain remodeling, including particularly the moving of the stairs which are involved in this accident, the plaintiff did state a claim upon which recovery might be granted and the question of the negligent installation of these stairs must be determined by a jury under proper instructions.

This case is therefore reversed for a new trial.

---

4. This case contains a most complete and clear discussion of tort liability arising by virtue of the contract. The opinion would be unduly lengthened by setting this out but the writer recommends to anyone who is interested that this case be read carefully.